Filed 7/24/26  EKO Substance Three LLC v. Kasaba CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| EKO SUBSTANCE THREE LLC, | B343408 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22SMCV00709) |
| v. | |
| MICHAEL KASABA et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Edward B. Moreton, Jr., Judge.  Reversed and remanded with directions.

Macey A. Chan for Plaintiff and Appellant.

Levy, Small & Lallas, Leo D. Plotkin and Mark D. Hurwitz for Defendants and Respondents.

————————

Plaintiff EKO Substance Three LLC (EKO) appeals a judgment of dismissal entered in favor of defendants Michael Kasaba and Michael E. Kasaba LLC (MEK).[1]  In granting defendants' motion for judgment on the pleadings, the trial court determined EKO's claims were premised on recorded easements that had been extinguished by an intervening foreclosure sale. EKO does not challenge this conclusion.  Instead, EKO contends the court abused its discretion by denying the company's request to amend its complaint to allege claims based on a prescriptive easement over an improved roadway crossing MEK's property. We conclude EKO has demonstrated a reasonable possibility that it can amend its pleadings to state viable claims based on a prescriptive easement.  We therefore reverse and remand with directions to grant leave to amend.

## BACKGROUND

### 1.  *The Complaint*

In October 2019, EKO purchased real property on Borna Drive in Malibu.  The complaint alleges the property is benefitted by two recorded 40-foot-wide easements running across the adjacent parcel owned by MEK.  An improved paved road lies

---

[1]     For reasons that are not entirely clear, Michael Kasaba contends in his respondent's brief that MEK "is not a party to this appeal."  This is incorrect.  The trial court entered a judgment of dismissal as to the entire complaint against Kasaba and MEK, and EKO took its appeal from that judgment. Regardless of whether MEK chooses to participate in the appeal, our reversal of the judgment means EKO will have the opportunity to amend its complaint against both Kasaba and MEK.

2

within the boundaries of the easement area and historically has provided access to EKO's property.

The complaint alleges defendants engaged in "wrongful, deceptive, unauthorized and illegal conduct" with respect to the easements and the improved road. Among other things, EKO alleges defendants submitted land-use applications that misrepresented the location of the road, failed to disclose the easements, and depicted a proposed residence footprint that encroaches on both the easements and the road. The complaint further alleges defendants placed landscaping, structures, and other improvements within the easement area and engaged in unpermitted grading.

Based on these allegations, EKO asserted causes of action for continuing and permanent nuisance, trespass, slander of title, quiet title, intentional interference with prospective economic advantage, declaratory relief, and negligence. Each cause of action is premised on EKO's claimed rights in the recorded easements and the improved road. The complaint also alleges that EKO has "rights either by grant of legal title, adverse possession and/or by prescriptive easement over, under, along and across the Defendants' land."

## 2.    *Motion for Judgment on the Pleadings*

Defendants moved for judgment on the pleadings, arguing a 2009 trustee's sale had extinguished the recorded easements as a matter of law. In support, defendants requested judicial notice of publicly recorded documents[2] showing the following: In

---

[2]    See *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924, fn. 1 ("The superior court granted defendants' request for judicial notice of the recorded deed of trust,

January 2005, the prior owner of MEK's parcel encumbered the property with a deed of trust in favor of Washington Mutual Bank, FA. Nearly three years later, in December 2007, the prior owner granted two 40-foot wide easements across the MEK parcel to a prior owner of EKO's parcel, providing roadway access and utility rights—the same recorded easements referenced in EKO's complaint. The prior owner later defaulted on his mortgage, and, in January 2009, the trustee completed a foreclosure sale, with the deed upon sale conveying the MEK parcel to the foreclosing beneficiary.

Under settled California law, defendants argued the foreclosure sale extinguished all easements and encumbrances recorded after the 2005 deed of trust—including the easements recorded in December 2007—and the purchaser at the 2009 trustee's sale therefore took title to the MEK parcel free and clear of any such junior interests.[3] Because each of EKO's causes of action depended on the existence of valid and enforceable easement rights across the MEK parcel, defendants argued the complaint failed to state a cognizable claim and should be dismissed in its entirety.

assignment of the deed of trust, substitution of trustee, notices of default and of trustee's sale, and trustee's deed upon sale. The existence and facial contents of these recorded documents were properly noticed in the trial court under Evidence Code sections 452, subdivisions (c) and (h), and 453.").

[3] See *San Francisco Design Center Associates v. Portman Companies* (1995) 41 Cal.App.4th 29, 45 ("when property is sold under a trust deed, the purchaser obtains title free and clear of all encumbrances subsequent to the deed of trust"); *R-Ranch Markets #2, Inc. v. Old Stone Bank* (1993) 16 Cal.App.4th 1323, 1328 (same).

EKO opposed the motion, attacking the merits of defendants' extinguishment argument and requesting leave to amend in the event the trial court found the complaint deficient. With respect to leave to amend, EKO asserted "facts relevant to [its] allowed use of the Easement Area via a prescriptive easement and/or equitable easement can be added." However, EKO did not state what facts it could or would add to support this theory.

The trial court granted the motion, concluding the 2009 foreclosure had extinguished the recorded easements and EKO therefore had no enforceable rights in the easement area to support its causes of action. As for leave to amend, the court dismissed the complaint's conclusory reference to a "prescriptive easement" as "just a raw allegation," and denied the request for leave because EKO's opposition had not shown what facts it could allege to support the new theory.[4]

## 3.    *EKO's Motion for New Trial*

Following entry of judgment, EKO moved for a new trial, arguing (a) defendants had unfairly shifted their defense after having "acknowledged the existence" of the recorded easements in their written discovery responses, and (b) the trial court's refusal to consider EKO's proposed amendment constituted an irregularity in the proceedings and an error of law. In a supporting declaration, EKO's managing member Carlos Gabriel Morales-Olivares explained he had been unaware of the

---

[4]    The court rejected EKO's offer to present supporting factual allegations at the hearing, explaining, "I don't think it would be fair or in accordance with the rules for me to allow you to just orally throw out some facts today without the other side having opportunity to respond to it."

extinguishment issue until defendants moved for judgment on the pleadings and, had the defense been raised earlier, EKO "could have readily amended the complaint to assert a separate cause of action for a prescriptive easement over the land owned by MEK, namely over the existing Improved Road alleged in the Complaint . . . which crosses through the MEK property and which has been used by [EKO], other landowners in the area[,] and their predecessors for decades, and without the permission of Defendants or Defendants' predecessors."

The trial court denied the motion without a hearing. This timely appeal followed.

## DISCUSSION

### 1. *Standard of Review and Leave to Amend*

"In the case of either a demurrer or a motion for judgment on the pleadings, leave to amend should be granted if there is any reasonable possibility that the plaintiff can state a good cause of action." (*Virginia G. v. ABC Unified School Dist.* (1993) 15 Cal.App.4th 1848, 1852, citing *Okun v. Superior Court* (1981) 29 Cal.3d 442, 460.) Thus, when the trial court dismisses an action at the pleading stage, we must "decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).) To satisfy this burden, the plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." (*Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636.) This

6

"showing can be made for the first time to the reviewing court." (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711; accord, *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386 [reasonable possibility showing "need not be made in the trial court so long as it is made to the reviewing court"].)

**2.      *EKO Has Demonstrated a Reasonable Possibility of Alleging the Existence of a Prescriptive Easement***

Before we consider EKO's showing, we must review the law governing prescriptive easements.  A prescriptive easement is an easement acquired through use of another's property, rather than by grant or reservation.  "To establish a prescriptive easement the party claiming it must show use of the property that has been 'open, notorious, continuous, and adverse for an uninterrupted period of five years.' " (*Husain v. California Pacific Bank* (2021) 61 Cal.App.5th 717, 725 (*Husain*), quoting *Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570 (*Warsaw*).)  The " 'term "adverse" in this context is essentially synonymous with "hostile" and " 'under claim of right.' " [Citations.]  A claimant need not believe that his or her use is legally justified or expressly claim a right of use for the use to be adverse. [Citations.]  Instead, a claimant's use is adverse to the owner if the use is made without any express or implied recognition of the owner's property rights.' " (*McBride v. Smith* (2018) 18 Cal.App.5th 1160, 1181.)  In other words, " '[a]dverse use' means only that the claimant's use of the property was made without the explicit or implicit permission of the landowner." (*Aaron v. Dunham* (2006) 137 Cal.App.4th 1244, 1252 (*Aaron*).)  "The existence or nonexistence of each of the elements of a prescriptive easement is a question of fact." (*Husain*, at p. 726.)

7

EKO contends its complaint "can be amended to allege that [EKO] and its predecessors in interest's use of the Easement Area for ingress, egress, roadway purposes and utilities has been open, notorious, continuous and adverse for at least five years," and these facts, if proven, would be sufficient to establish a prescriptive easement and to support the causes of action asserted in the complaint. We agree. As discussed, in a declaration offered in support of its motion for new trial, EKO's managing member Morales-Olivares explained that had defendants challenged the validity of the recorded easements earlier, EKO "could have readily amended the complaint to assert a separate cause of action for a prescriptive easement over the land owned by MEK, namely over the existing Improved Road alleged in the Complaint . . . which *crosses through the MEK property and which has been used by [EKO], other landowners in the area*[,] *and their predecessors for decades, and without the permission of Defendants or Defendants' predecessors*." (Italics added.) The declaration demonstrates a reasonable possibility that EKO can amend its complaint to allege facts satisfying each element of a prescriptive easement, thus curing the pleading defect arising from extinguishment of the recorded easements. (See *Blank*, *supra*, 39 Cal.3d at p. 318.)

*Husain* is instructive. The trial court in *Husain* entered a judgment establishing a prescriptive easement for an apartment building owner over portions of an adjacent property, including a shared driveway, parking spaces, a garbage area, and a garden. (*Husain*, *supra*, 61 Cal.App.5th at pp. 723–725.) For over 50 years the two properties had been held in common ownership, during which time the apartment building tenants' use of the servient property had been permitted by the common owner. (*Id.*

8

at pp. 720–722, 728–729.)  Later, the properties were sold to different owners in separate trustee sales, after which, the bank that acquired the apartment building and its tenants continued to use the neighboring property openly, continuously, and without ever requesting permission from the new owner of the servient property.  (*Id*. at pp. 721–723.)  On appeal, the servient property owner argued the use was not hostile because it had originated with the prior common owner's permission.  (*Id*. at p. 728.)  The reviewing court rejected the contention, reasoning that once the properties were severed into separate ownership, the absence of any permission from the new servient owner rendered the continued use adverse, and because the use openly continued for more than five years, it had been sufficient to put the new owner on constructive notice that it needed to take legal action to prevent the creation of a prescriptive easement.  (*Id*. at pp. 727–732.)

As in *Husain*, the record supports a reasonable possibility that EKO can fairly allege use of the improved road over MEK's property has been open, notorious, continuous, and adverse for an uninterrupted period of five years.  (See *Husain*, *supra*, 61 Cal.App.5th at p. 725.)  According to the Morales-Olivares declaration, the improved road "crosses through the MEK property" and has been used by EKO, other area landowners, and their predecessors "for decades."  The complaint itself alleges the improved road runs within the easement area across MEK's property, and defendants' proposed development and physical encroachments seriously and materially intrude upon both the easement area and the improved road.  Together, the declaration and existing allegations describe a visible, permanent roadway used for ingress and egress by landowners over an extended

9

period—precisely the kind of use that would impart notice to the servient property owner that legal action must be taken to prevent the creation of a prescriptive easement. (See *id*. at pp. 723–725, 727 [tenants' daily use of driveway, parking spaces, and garbage area was "substantial and constant" and plainly visible to successor owner of servient parcel, such that it imparted necessary "constructive notice" of adverse use sufficient to create a prescriptive easement].)

As for duration, although the declaration does not specify a precise start date, the reference to "decades" of use by predecessors in interest, combined with the undisputed fact that the trustee's sale occurred in January 2009, readily supports a reasonable inference that adverse use continued for at least five uninterrupted years following extinguishment of the recorded easements. Thus, at the pleading stage, EKO can fairly allege that from a date at least five years before the filing of the complaint—and specifically for at least five years following the 2009 foreclosure sale—EKO, its predecessors, and neighboring landowners continuously used the improved road for ingress and egress to their respective properties. (See *Husain*, *supra*, 61 Cal.App.5th at p. 731 [where new owner of dominant parcel continued to use property as had been permitted before servient parcel was sold to a separate owner, such use was sufficiently "open, notorious, continuous, and hostile for more than five years" to establish prescriptive easement against new owner].)

Finally, the declaration states EKO and other landowners have used the improved road "without the permission of Defendants or Defendants' predecessors." As explained in *Husain*, use made without the explicit or implicit permission of the landowner is adverse use. (*Husain*, *supra*, 61 Cal.App.5th at

10

pp. 726, 730; accord, *Aaron*, *supra*, 137 Cal.App.4th at p. 1252 [" '[a]dverse use' means only that the claimant's use of the property was made without the explicit or implicit permission of the landowner"].) Nevertheless, defendants argue the adverse use element is somehow negated by EKO's acknowledgment in its opening brief that there was no "necessity to enforce a prescriptive easement by way of a cause of action in the Complaint" until the extinguishment defense surfaced. We disagree. This statement—which appears to have been drawn from the Morales-Olivares declaration—merely explains why EKO did not plead a prescriptive easement claim earlier; it does not concede that the underlying use was permissive. A party may be unaware of the need to assert a prescriptive right, or it may rely on recorded easements believed to be valid while simultaneously using the property without permission. (See, e.g., *Husain*, at p. 731 [continued use as had been earlier permitted was adverse].) The focus for prescriptive purposes is on the character of the use as it would appear to the owner of the servient tenement—not on the claimant's litigation strategy. (See *id.* at p. 726; see also *Warsaw*, *supra*, 35 Cal.3d at p. 572 ["Whether the use is hostile or is merely a matter of neighborly accommodation, however, is a question of fact to be determined in light of the surrounding circumstances and the relationship between the parties."].)

Defendants also seem to contend EKO's use of the improved road could never have " 'ripen[ed]' " into a prescriptive easement because they posted a sign along the road on June 27, 2024 warning that passage was by permission and subject to

11

control of the owner "pursuant to Civil Code section 1008."[5]  The argument misses the point.  The prescriptive easement EKO seeks to allege is not based on use occurring after the sign was posted, but rather on years of earlier adverse use that predates defendants' 2019 acquisition of the MEK property.  If the prescriptive period ran to completion before defendants posted the sign—an inference we must accept at the pleading stage— then the sign came too late to defeat a right that had already vested.  Civil Code section 1008 interrupts the running of a prescriptive period going forward—it does not extinguish a prescriptive easement that has already ripened.  If anything, the sign's posting in June 2024 seems to confirm that defendants themselves recognized the need to interrupt whatever rights might be claimed through EKO's and other landowners' long-standing use of the improved road.

Defendants argue granting leave to amend would invite a sham pleading, because EKO could not simply omit the recorded easement allegations that rendered its complaint defective without explanation.  We are not persuaded.  The sham pleading doctrine bars an amended complaint that contradicts the factual allegations of the original in order to plead around a defect.  (See *Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 425–426.)  But the complaint's core factual allegations—namely, the

---

[5]     Civil Code section 1008 provides:  "No use by any person or persons, no matter how long continued, of any land, shall ever ripen into an easement by prescription, if the owner of such property posts at each entrance to the property or at intervals of not more than 200 feet along the boundary a sign reading substantially as follows:  'Right to pass by permission, and subject to control, of owner:  Section 1008, Civil Code.' "

12

existence of the improved road, defendants' physical encroachments upon it, defendants' misrepresentations to land-use authorities, and the interference with EKO's access to and development of its property—are not contradicted by a prescriptive easement theory. What would change is the legal theory under which those facts are pleaded—not the facts themselves. The proposed amendment does not contradict or explain away the original easement allegations; it reframes the legal basis for the same underlying claims.

Moreover, the complaint already alleges the improved road is the only practical means of access to EKO's property, and defendants' alleged encroachments and misrepresentations have interfered with that access and with EKO's development plans. Upon EKO's amendment to allege a prescriptive easement over the road, those same factual allegations would support amended nuisance, trespass, quiet title, declaratory relief, and related claims premised on defendants' alleged interference with EKO's prescriptive right, rather than the extinguished recorded easements. The proposed amendment does not introduce an entirely new factual scenario; it refines EKO's legal theory to conform to facts already alleged in the complaint that were further developed in the Morales-Olivares declaration.

Finally, defendants argue Kasaba is not the record owner of the MEK property and EKO therefore cannot establish a prescriptive easement or actionable claim against him personally. However, the complaint alleges Kasaba is MEK's managing member, the MEK property was purchased for his benefit, and he and MEK acted in concert in engaging in the alleged wrongful conduct, including placing encroachments over the easement area, engaging in unpermitted grading, and submitting false and

13

deceptive representations to land-use authorities. Further, to the extent Kasaba exercises control over the MEK property as the company's managing member and beneficial owner, he is amenable to claims that are binding on the property and on those who control it. Causes of action such as quiet title and declaratory relief, which seek to establish rights in and against the property itself, must bind Kasaba to the extent he controls and directs MEK's exercise of rights over the parcel. And causes of action sounding in nuisance, trespass, slander of title, intentional interference, and negligence are directed to Kasaba's own alleged conduct—the encroachments, misrepresentations, and interference he is alleged to have personally directed or carried out—rather than solely to his status as a property owner. Whether the evidence ultimately supports those allegations is a question for the trier of fact. At the pleading stage, the complaint's allegations—as amended to support a prescriptive easement theory—are sufficient to keep Kasaba in the case.

The original complaint is capable of amendment, and the record contains specific factual assertions that, if pleaded and proven, would satisfy each element of a prescriptive easement theory. Because EKO has shown there is a reasonable possibility its pleadings can be cured by amendment, it was an abuse of discretion to deny leave to amend. (See *Blank, supra,* 39 Cal.3d at p. 318.)[6]

---

[6]     Because we conclude leave to amend should have been granted, EKO's appeal from the denial of its new trial motion is moot.

14

## DISPOSITION

The judgment is reversed and the case is remanded with directions to grant leave to amend. Plaintiff EKO Substance Three LLC is entitled to costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HANASONO, J.

We concur:

ADAMS, Acting P. J.

OCHOA, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.